1   LENNON & KLEIN, P.C.
    DAVID P. LENNON (*pro hac vice* application forthcoming)
2   david@lennon-klein.com
    3922 Bellinger Lane
3   Medford, OR 97501
    david@lennon-klein.com
4   Tel.: (914) 298-0582

5   LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK LLP
    DAVID B. TILLOTSON (SBN 148162)
6   DTillotson@lpslaw.com
    BRIAN C. PEDERSEN (SBN 168107)
7   BPedersen@lpslaw.com
    199 Fremont St
8   San Francisco, CA 94105
    Tel.:  (415) 957-1800
9   Fax:  (415) 974-1520

10  Attorneys for Plaintiffs
    MIRSYL, INC., DAVID P. LENNON
11   and NOVATO DEVELOPMENT, LLC

12                  UNITED STATES DISTRICT COURT

13                  DISTRICT OF NORTHERN CALIFORNIA

14
    DAVID P. LENNON, MIRSYL, INC. and
15  NOVATO DEVELOPMENT, LLC.,                    Case No. _____

16                      Plaintiffs,

17              v.                               **COMPLAINT**

18  REALITY KATS, LLC, DENNIS SIMPSON           **MALICIOUS PROSECUTION,**
    and QILI YE SIMPSON,                        **ABUSE OF PROCESS, SLANDER OF**
19                                              **TITLE and CONSPIRACY**
                        Defendants.
20
                                                **DEMAND FOR JURY TRIAL**
21

22

23          Plaintiffs, David P. Lennon, Mirsyl, Inc. and Novato Development, LLC, for their

24  complaint against Defendants, Reality Kats, LLC, Dennis Simpson and Qili Ye Simpson, allege

25  as follows:

26

27

28  Page 1 — COMPLAINT

**INTRODUCTION**

1.      Defendant Dennis Simpson is a case of a wealthy businessman that thinks the law and rules of civility do not apply to him. Simpson lies in court proceedings because he believes that he will never be prosecuted for perjury and if he is caught, he can simply pay the court imposed financial sanction.  If he is not caught, or a defendant does not have the wherewithal to fight his frivolous litigations, he gets away with causing harm to defendants and the legal system.

2.      Defendant Qili Ye Simpson, Simpson's wife and the beneficiary of his trust which owns Reality Kats, works with and helps Simpson in the prosecution of his frivolous actions.

3.      Over the course of months, defendants commenced or caused to be commenced five different proceedings against plaintiff Lennon, in four different forums and three different states, many involving the same set of facts.  All of these have been resolved in plaintiffs' favor or have been voluntarily dismissed by defendants.  Defendants never sought an adjudication on the merits, but rather sought to litigate plaintiff Lennon "into the ground" so that Lennon and his companies would default on certain promissory notes and return certain properties purchased from defendant Reality Kats without a fight.

**THE PARTIES**

4.      Plaintiff David P. Lennon ("Lennon") is an individual residing in the State of Oregon. Lennon has been a practicing attorney for the past thirty years. He is admitted to the bars in New York and Oregon as well as several federal jurisdictions.  In 1999, Lennon co-founded Lennon & Klein, P.C., where he maintained his law practice.  Lennon is a commercial litigator who has appeared in courts throughout the country. In his over thirty years of practice he has never been disciplined in any jurisdiction.

5.     Plaintiff Mirsyl, Inc. ("Mirsyl") is an Oregon corporation with a place of business in Oregon. Lennon is the owner of Mirsyl.  Mirsyl owns 100% of the membership interest in Novato Development, LLC ("Novato Development"),

6.     Plaintiff Novato Development is an Oregon limited liability company with a place of business in Oregon. Novato Development owns a real estate development in Novato, California.

7.     Defendant Dennis Simpson ("Simpson") is an individual residing in the State of California. Simpson is a wealthy businessman.

8.     Defendant Qili Ye Simpson ("Qili") is an individual residing in the State of California. Upon information and belief, Qili is Simpson's wife and is the beneficiary of Simpson's trust, Scenic Trust.

9.     Defendant Reality Kats, LLC ("Reality Kats") is a California limited liability company with a place of business in California. Upon information and belief, defendant Simpson is the manager of Reality Kats.  Scenic Trust owns Reality Kats.

10.     Defendants Simpson and Reality Kats are regularly engaged in buying and selling real estate and have been since the formation of Reality Kats in 2006.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity of citizenship exists between the parties.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to this action occurred in this district, including, but not limited to, the adjudication of the Novato Action, defined below.

## INTRADISTRICT ASSIGNMENT

13.     The Novato Action, which in substantial part gives rise to the claims herein, was filed and adjudicated in the Oakland Division before the Honorable Claudia Wilken. Thus,

Page 3 — COMPLAINT

1   assignment of this action to the Oakland Division is proper as a substantial part of the events

2   giving rise to this action occurred in the county served by that Division.

3                                  **FACTUAL ALLEGATIONS**

4          14.     Since 2016, to regain possession of certain property sold by Simpson through his

5   company, Reality Kats, to Lennon — including Lennon's family home — Simpson and Qili

6   engaged in a scheme to commence baseless litigation against Lennon. Simpson and Qili

7   commenced these baseless legal proceedings to cause defaults on promissory notes held by

8   Reality Kats secured by the property sold to Lennon and to otherwise harm Lennon.  Some of the

9   proceedings commenced by Simpson and Qili were also against Lennon's wife and his

10  businesses. In one of these proceedings against Lennon and his wife, Qili was also a plaintiff.

11         15.     The legal proceedings that Simpson commenced against Lennon since early 2016,

12  are as follows:

13                 a.      In September 2016, Simpson filed a complaint with the Oregon State Bar

14  in which Simpson claimed that Lennon represented Simpson and his business in a transaction

15  regarding the sale of a business in which Lennon was a party to the transaction.  The Oregon

16  State Bar ultimately dismissed Simpson's Oregon bar complaint as lacking in merit because,

17  *inter alia*, Simpson falsely claimed that Lennon represented Simpson in the transaction where in

18  reality, at Lennon's insistence, Simpson was represented by another attorney.

19                 b.      In November 2016, Simpson and Reality Kats commenced an action in

20  California state court against Lennon, Mirsyl and Novato Development (Lennon's companies)

21  and improperly filed a *Lis Pendens* against Novato Development's real property. That action was

22  removed to this Court. After pending for well over a year, Simpson and Reality Kats tried to

23  voluntarily withdraw this action without prejudice so that they could re-file the action in Oregon.

24  The Court denied Simpson and Reality Kats' motion to withdraw and instead granted Lennon,

25  Mirsyl and Novato Development summary judgment and sanctioned Simpson, Reality Kats, and

26  their attorney collectively over $200,000 for filing a frivolous action.

27

28  Page 4 — COMPLAINT

1         c.     In December 2016, Simpson filed a third-party complaint against Lennon

2 and his law firm, Lennon & Klein, P.C., in the United States District Court, District of Oregon,

3 in an enforcement action by the Federal Trade Commission against, among others, Simpson and

4 his businesses.  The Court dismissed Simpson's third-party complaint against Lennon and his

5 law firm for failure to state a claim;

6         d.     In February 2017, Simpson, Qili, and Reality Kats commenced an action

7 against Lennon and his wife in Oregon state court. The morning of the hearing of Lennon's

8 motion for summary judgment, Reality Kats (the only remaining defendant at that time) filed a

9 voluntary dismissal of the action against Lennon and his wife.  Thereafter, the Court sanctioned

10 Reality Kats over $50,000 for bringing that frivolous action against Lennon.

11         e.     In June 2017, Simpson filed a complaint with the New York State Bar

12 based on the same false factual allegations that he made in the Oregon state court against Lennon

13 and his wife.  After dismissal of the Oregon state action, the New York State Bar dismissed

14 Simpson's New York bar complaint.

15     16.    All of defendants' legal proceedings against Lennon, Mirsyl and Novato

16 Development were asserted in bad faith and with malice.

17 **Background Facts**

18     17.    From time to time, from 2002 until late 2015, Lennon, through his law firm

19 Lennon & Klein, P.C., represented Simpson and Reality Kats as an attorney. Lennon also

20 represented Simpson's friend and business associate, Jeffery Hoyal, in various matters, often

21 jointly with Simpson. Hoyal was also the trustee of Simpson's trust, Scenic Trust. Scenic Trust

22 was the sole member of defendant Reality Kats.

23     18.    Simpson and Hoyal were engaged in the magazine subscription and direct mail

24 marketing business but also had — either together or separately — several real estate projects on

25 the West Coast.

26

27

28 Page 5 — COMPLAINT

19.     Over the years, Lennon, who was a member of the New York bar and lived and worked in New York, came to represent Simpson and Hoyal in more and more matters, often on the West Coast where Simpson and Hoyal were located.

**The Lennons Purchase the Bellinger Property**

20.     In 2011, Simpson and Hoyal suggested to Lennon that he move to Oregon and offered to sell to Lennon a home on a vineyard owned by Reality Kats. Simpson and Reality Kats developed the property years earlier and had been unable to sell it.  They also represented that by being geographically closer to them, Lennon could be involved more in their businesses which would benefit Lennon financially.

21.     Simpson and Hoyal proposed that Lennon pay $2,995,000, which would be paid by a promissory note held by Reality Kats.  As proposed by Simpson and Hoyal, the note would bear no interest and would be payable $5,000 per month for 50 years.

22.     In August 2011, on the terms proposed by Simpson and Hoyal, with an agreed $5,000 reduction in the price, Lennon and his wife purchased Reality Kats' property in Oregon located at 3922 Bellinger Lane, Medford, Oregon (the "Bellinger Property").

23.     Lennon and his wife signed and delivered to Simpson and Reality Kats a written promissory note in accordance with the terms of the agreement (the "Bellinger Note").  The Bellinger Note was secured by a trust deed.

24.     In or about August 2011, in accordance with the purchase, Lennon moved with his family from New York to the Bellinger Property.

25.     Lennon was admitted to the Oregon bar in 2012.

26.     Lennon has paid to Reality Kats all of the $5,000 monthly payments due on the Bellinger Property in accordance with the terms of the Bellinger Note.

**Simpson and Hoyal's Business Relationship**

27.     Starting in late 2014, various governmental agencies began investigations and enforcement actions against Simpson and Hoyal's magazine subscription business.  As a result

Page 6 — COMPLAINT

of these investigations and enforcement actions, in March 2015 Simpson and Hoyal's magazine subscription business shutdown.

28.     The shutdown of Simpson and Hoyal's magazine subscription business resulted in animosity between Simpson and Hoyal.  As a result, Simpson and Hoyal endeavored to unwind their business relationship.

**Lennon Purchases Novato Development**

29.     Novato Development was formed by Simpson and Hoyal in or about 2007 to purchase a specific piece of undeveloped real estate in Novato, California. Simpson and Hoyal's intention was to develop the property to build and sell 33 single family homes. From 2007 to 2015, the venture lost millions of dollars.

30.     After the failure of their magazine subscription business in 2015, Simpson and Hoyal tried to sell Novato Development's remaining unsold and unfinished property. At that time, a trust created by Hoyal and his wife, Crater Lake Trust, owned 50% of Novato Development, Simpson owned 7% and Reality Kats owned 43%.

31.     Upon information and belief, Simpson and Hoyal also tried to negotiate a deal pursuant to which Hoyal would purchase the 50% interest owned and/or controlled by Simpson. They were unable to agree to terms.

32.     Knowing Lennon's familiarity with the project by virtue of work he performed for Novato Development, Simpson and Hoyal approached him about purchasing the project.  At that time, Novato Development owned 20 unsold lots in various states of development.

33.     Novato Development had not yet completed all of the subdivision improvements, such as the underground utilities, engineering and street work, as well as improvements outside of the development that were required under the subdivision improvement agreement with the City of Novato.

34.     Because Lennon had performed legal work as an attorney for Novato Development, Simpson and Hoyal, Lennon advised Simpson and Hoyal on the telephone and in writing that he would not represent them in any transaction in which Lennon would purchase

Page 7 — COMPLAINT

Novato Development and that they would need to engage their own independent attorneys with respect to such a transaction.

35.    Simpson and Reality Kats engaged attorney William J Braun of Braun & Melucci, LLP in La Jolla, California to represent them in connection with the sale of Novato Development to Lennon.

36.    Hoyal refused to engage an attorney and signed the requisite acknowledgment that Lennon was not acting as his attorney, that Lennon recommended he engage an attorney and that he was not going to engage an attorney in connection with the transaction. Although Hoyal is not an attorney admitted to practice law, he attended law school and has an LLM.

37.    Thereafter, the parties negotiated the terms of the sale of Novato Development to Lennon.

38.    Pursuant to the agreement, Lennon formed Mirsyl to purchase the 100% membership interest in Novato Development from Simpson, Reality Kats and Crater Lake Trust (the trust formed by Hoyal).

39.    In November 2015, Mirsyl purchased 100% of the membership interest in Novato Development for $3,000,000.00.

40.    In accordance with the written agreement between the parties, Mirsyl paid the purchase price by delivering to Reality Kats a promissory note in the amount of the purchase price (the "Novato Note").

41.    The purchase agreement provided that Mirsyl would repay the principal of the Novato Note upon the sale of future developed lots.

42.    Simpson knew that Lennon lacked funds to proceed with developing Novato Development.

43.    Accordingly, in conjunction with the purchase and sale of Novato Development, Reality Kats also extended a $500,000 line of credit to Mirsyl to enable it to complete construction of three houses which were works-in-progress.

Page 8 — COMPLAINT

44. Both loan obligations were collateralized by Mirsyl's membership interest in Novato Development and governed by a Pledge Agreement signed by Simpson as manager of Reality Kats, and by Lennon as president of Mirsyl.

45. The agreement with Simpson and Reality Kats provided that upon the sale of the three houses which were works-in-progress, Mirsyl would use the proceeds thereof to repay the line of credit and then Novato Development would have the remaining proceeds of the sale of the three houses available to further develop the remaining lots and build houses for sale. The proceeds of those additional houses would provide the funds to build additional houses as well as repay portions of the purchase loan. This process would continue until all the remaining houses were built. The parties anticipated that it would take approximately two to four years to build and sell the remaining houses and repay the outstanding loan obligation.

46. After closing the transaction, Novato Development utilized the $500,000 proceeds of the line of credit and completed the three houses which were works-in-progress.

47. The last of the three houses sold in July 2016, and in accordance with the parties' agreement, Mirsyl repaid the line of credit according to its terms.

48. Mirsyl also made timely interest payments on the Novato Note as required by its terms.

**Simpson Starts Making Specious Claims against Lennon and Hoyal**

49. Almost immediately after the sale of Novato Development to Mirsyl, Simpson began to make specious claims against Hoyal.

50. Although Simpson and Reality Kats sold their interest in Novato Development in November 2015, in early 2016, Simpson tried to engage Lennon's assistance in concocting a claim against Hoyal. Simpson was trying to obtain Novato Development's books and records to investigate a purported claim that Hoyal converted Novato Development funds and/or assets while Simpson and Reality Kats were members. Lennon asked Simpson if he had any evidence or reason to conduct such an investigation and he replied that he did not. Accordingly, Lennon advised Simpson that he would not help him in his campaign against Hoyal.

Page 9 — COMPLAINT

51.     Thereafter, upon information and belief, Simpson viewed Lennon as aligned with Hoyal and began making specious claims against Lennon.

**Simpson's Scheme with Ankerberg**

52.     Upon information and belief, no later than January 2016, Simpson engaged in a scheme with Curt Ankerberg, a former certified public accountant in Oregon, to concoct claims against Lennon and Hoyal.

53.     Ankerberg was previously Simpson, Hoyal and Lennon's accountant.

54.     In emails, Simpson and Ankerberg laid out their scheme: they stated that they knew that Lennon lacked substantial funds and that it would be difficult for Lennon to "fight a lawsuit." Ankerberg wrote that if they could get their attorneys to "freeze the sale of any of [Lennon and Hoyal's] assets so [they] have no cash" that Lennon would default on both Novato Development and Lennon's house obligation regarding the Bellinger Property. Ankerberg wrote, "Anyway, it's good news that Lennon is hurting for cash flow, because he might just return ownership of Novato to you without a fight. Besides that, he might be afraid of losing his law license due to his fraud."

 Ankerberg expected his fee for helping Simpson in his scheme to be a percentage of the millions of dollars that they expected to recover from Lennon and Hoyal.

55.     Initially, on February 1, 2016, Ankerberg, on behalf of Simpson, demanded that: (a) Lennon rescind Mirsyl's purchase of Novato Development based on Simpson's purported reliance on Novato Development's financial statements that were purportedly "incomplete and inaccurate at the time of sale" and (b) that Lennon assist Simpson and Ankerberg in obtaining Novato Development's financial records. Ankerberg threatened that if Lennon did not comply, that he and Simpson would report Lennon to the Oregon State Bar for an undisclosed violation.

56.     Lennon refused to accede to Simpson and Ankerberg's unjustified demands.

57.     Simpson and Ankerberg both recognized that Lennon was not earning fees from the defunct magazine subscription business — his main source of income — and perceived that Lennon did not have the funds or wherewithal to defend lawsuits by Simpson and Reality Kats.

Page 10 — COMPLAINT

58.    Simpson and Ankerberg's scheme was to utilize frivolous litigation to force Lennon and Mirsyl to default on the Novato Note and the Bellinger Note so that Simpson and Reality Kats could regain possession of Novato Development and the Bellinger Property (Lennon's family home).

59.    Simpson, upon information and belief, with Ankerberg's assistance, engaged an attorney in Oregon, to prosecute Simpson's claims against Lennon and Hoyal.

60.    On or about February 5, 2016, Simpson's attorney sent a demand letter to Crater Lake Trust (the trust established by Hoyal) and Mirsyl (Lennon's company that purchased Novato Development) stating that Lennon improperly acted as Simpson and Reality Kats' attorney in connection with the Novato Development sale, and that Simpson relied on certain unidentified false financial information provided by Lennon in connection with the sale of Novato Development.  The letter also demanded financial information about Novato Development and threatened litigation if they did not comply.

61.    Lennon responded that he did not represent Simpson or Reality Kats in connection with the Novato Development transaction and that as the buyer he did not provide any financial information to Simpson in connection with Novato Development transaction.  In addition, Lennon requested that Simpson's attorney advise what financial information was purportedly false. The attorney never responded to Lennon.

62.    In or about March 2016, Simpson and Qili started an action against Hoyal in the Circuit Court of the State of Oregon, Jackson County, captioned, *Dennis Simpson and Qili Ye Simpson, both individually and as Beneficiaries of the Scenic Trust v. Jeffrey D. Hoyal, individually and as former Trustee of the Scenic Trust*, Case No. 16CV08730.  In that action, Simpson and Qili alleged, *inter alia*, that in connection with the sale of Novato Development to Mirsyl, Hoyal misrepresented that Novato Development owned 5 lots and no other lots, that there was a promissory note due Novato Development in the amount of $3,025,000, that Novato Development had a equity value of $5.5 million. The complaint also alleged that Hoyal breached his fiduciary duty as trustee of Scenic Trust in allowing the sales of Novato Development to

Page 11 — COMPLAINT

Mirsyl and the Bellinger Property to Lennon. Hoyal subsequently obtained summary judgment in this action and the Court awarded Hoyal over $70,000 in attorneys fees against Simpson.

63.    In or about July 2016, Simpson, Qili and Reality Kats' attorney sent another demand letter to Lennon stating that Simpson and Qili claimed that Lennon represented that he would payoff the Bellinger Note within 10 years despite the Bellinger Note's clear 50-year term. Attorney Jarvis again threatened litigation against Lennon.

64.    Lennon responded that neither he nor his wife represented that they would payoff the Bellinger Note within 10 years and that there was no legal basis for a claim against Lennon or his wife. Lennon advised that if Simpson or Qili brought such an action, that Lennon would seek sanctions for the bringing of a frivolous claim. Simpson and Qili did not bring an action against Lennon at that time with that attorney. Upon information and belief, that attorney, Darrel Jarvis, did not bring an action against Lennon because he recognized that Simpson and Qili were asserting claims and threatening litigation against Lennon without any basis.

**Simpson Brings a Third-Party Complaint Against**
**Lennon and Hoyal in an FTC Enforcement Action**

65.    In or about April 2016, the Federal Trade Commission commenced an enforcement action against Simpson, Reality Kats, Hoyal and others in the United States District Court, District of Oregon, related to their magazine subscription business captioned, *Federal Trade Commission v. Adept Management, Inc.*, No. 1:16-CV-00720-CL.

66.    Lennon was the attorney for certain of the other defendants in the FTC enforcement action.

67.    On or about December 1, 2016, Simpson and Reality Kats commenced a third-party action against Lennon for indemnity.

68.    The third-party complaint against Lennon is replete with false allegations which Simpson knew to be false, including that Lennon created the direct mail solicitation at issue in the FTC enforcement action, that Lennon knew Hoyal made false statements in his answer in the

FTC enforcement action (who Lennon did not represent) and that Lennon and his wife agreed to pay off the Bellinger Note within 10 years.

69.    Simpson and Reality Kats also filed a third-party complaint against Hoyal.

70.    Lennon moved to dismiss Simpson and Reality Kats' third-party complaint in the FTC enforcement action for failure to state a claim.

71.    As a result of Simpson and Reality Kats' various actions pending against Lennon at that time, on or about January 27, 2017, Lennon moved to withdraw as attorney for the defendants he represented in the FTC action.

72.    On March 20, 2017, the Court dismissed Simpson and Reality Kats' third-party complaint against Lennon and Hoyal.

73.    Since the Court dismissed Simpson and Reality Kats' third-party complaint against Lennon, Lennon never had an opportunity to challenge in court the specific false factual allegations made by Simpson and Reality Kats in the third-party complaint against Lennon.

**Simpson's Frivolous Bellinger Litigation Against Lennon and His Wife**

74.    Since Simpson and Qili's original attorney would not bring a frivolous action against Lennon regarding the Bellinger Property, Simpson and Qili engaged a new attorney.

75.    In or about February 1, 2017, Simpson's new attorney sent Lennon a letter demanding that Lennon acknowledge that the Bellinger Note is due to be paid within 10 years despite the clear terms of the Bellinger Note, and attached a draft complaint against Lennon and his wife.

76.    Simpson, Qili nor Reality Kats waited for a response. Instead, they filed the complaint in Circuit Court of the State of Oregon, County of Jackson, captioned, *Dennis Simpson, Qili Ye Simpson, and Reality Kats, LLC v. David Lennon and Jody Lennon*, Case No. 17CV05360 (the "Bellinger Property Action"). The Bellinger Property Action sought reformation of the Bellinger Note based on a purported oral promise. In this complaint, Simpson, Qili and Reality Kats claimed that Lennon and his wife Jody orally promised to both that they

Page 13 — COMPLAINT

would pay off the Bellinger Note within 10 years despite its clear 50-year term. Plaintiffs later

filed an amended complaint dropping Simpson and Qili as plaintiffs.

77.    Lennon and his wife defended the Bellinger Property Action, which included

conducting discovery and motions to compel Reality Kats to comply with its discovery

obligations.

78.    On January 29, 2018, with the hearing on Lennon's motion for summary

judgment scheduled for that afternoon, and trial scheduled for February 13, 2018, Reality Kats

voluntarily and unilaterally dismissed this Oregon Bellinger Property Action as allowed under

Oregon Rule of Civil Procedure 54A. Judgment dismissing this Oregon Bellinger Property

Action was entered on or about February 2, 2018.

79.    Thereafter, Lennon and his wife moved for sanctions against Reality Kats to

recovery their attorneys fees.

80.    Under Oregon law, for Lennon to recovery his and his wife's attorneys' fees as a

sanction from Reality Kats, they needed to show that Reality Kats' complaint was totally devoid

of legal or factual support at the time that it was made and that the claim was made for an

improper purpose.  The Oregon State Court held an evidentiary hearing on these issues.

81.    Neither Simpson nor Reality Kats testified at the hearing to support the filing of

Reality Kats' reformation claim.

82.    In or about August 2018, after hearing the evidence, the Oregon State Court

found that the Lennons were entitled to their attorneys fees in defending the Bellinger Property

Action. In its decision awarding the Lennons their attorneys' fee in the amount of $51,537.50,

the Oregon State Court found, as follows:

> The court has concluded, based upon its review of this case, that
> Plaintiff's reformation claim is utterly lacking in factual or legal
> merit. There was no antecedent agreement, there was no mistake
> and it is the Plaintiff who has engaged in inequitable conduct. In
> this regard, the court fully accepts the testimony of Mr. Lennon,
> who the court finds to be highly credible, and rejects Plaintiff's
> factual position in its entirety. The court believes that Plaintiff's
> version of the most salient facts has been "created" to advance its

Page 14 — COMPLAINT

improper objective of bringing Mr. Lennon to his knees through vexatious litigation.

83.    On or about September 5, 2018, a supplemental judgment for sanctions in the amount of $51,919.50 was entered in favor of Lennon and his wife and against Reality Kats.

**Simpson's Oregon Bar Complaint Against Lennon**

84.    In or about September 2016, Simpson filed a complaint with the Oregon State Bar again falsely claiming that Lennon acted as Simpson's attorney in connection with the Novato Development transaction and obtained unidentified confidential information from Ankerberg through a subterfuge which information Lennon used to his advantage in connection with his purchase of Novato Development.

85.    Simpson also alleged that Lennon breached his duty to Simpson in structuring the Novato Development transaction in such a way that Simpson claimed caused him negative tax consequences.

86.    Simpson also falsely claimed that with respect to the Bellinger Property, that Lennon orally agreed to pay the Bellinger Note within 10 years despite its 50-year term.

87.    The bar complaint specifically stated that Ankerberg can provide the details of Simpson's complaint. Ankerberg never did.

88.    On or about March 2, 2017, the Oregon State Bar determined that Lennon did not engage in any professional misconduct and dismissed Simpson's bar complaint against Lennon. The Oregon State Bar's dismissal addressed to Simpson also stated that "Mr. Lennon has provided evidence that he specifically informed you and the other seller that he could not act as your lawyer in the Sale, and stated that 'it is necessary for each of you to have your own attorneys.' You did, in fact, hire another lawyer to represent you in the transaction with Mr. Lennon, and confirmed in writing your understanding of Mr. Lennon's role in the transaction."

**Simpson and Reality Kats' Frivolous Action and Improper**
***Lis Pendens* with Respect to Novato Development**

89.    On or about November 2, 2016, Simpson and Reality Kats caused to be filed a summons and complaint in the Superior Court of California, County of Marin against Lennon,

Page 15 — COMPLAINT

1  Mirsyl and Novato Development for fraud, legal malpractice — constructive fraud, legal

2  malpractice — dual representation of adverse interests, breach of fiduciary duty, derivative

3  action by member of a limited liability company and restitution/ constructive trust/ equitable lien

4  (the "Novato Action").

5       90.    In connection with filing the complaint in the Novato Action, also on November

6  2, 2016, Simpson and Reality Kats also caused to be filed with the Marin County Clerk a Notice

7  of Pending Action in accordance with the California Code of Civil Procedure § 405, *et seq*.

8  against all of Novato Development's real property (the "*Lis Pendens*"). Not only did Simpson

9  and Reality Kats' *Lis Pendens* cloud Novato Development's title, it also improperly clouded title

10  to houses that Novato Development sold to consumers going back almost 10 years.

11       91.    By virtue of the *Lis Pendens*, Novato Development was unable to sell any further

12  property, was unable to borrow money to fund further construction and was prevented from

13  moving ahead with the development project.

14       92.    On or about December 2, 2016, Lennon, Mirsyl and Novato Development filed a

15  Notice of Removal of the Novato Action in the United States District Court for the Northern

16  District of California as there was federal court jurisdiction by virtue of the complete diversity of

17  citizenship between plaintiffs and defendants.

18       93.    The *Lis Pendens* was wrongfully filed by Simpson and Reality Kats because,

19  *inter alia*, the Novato Action did not involve a real property claim.

20       94.    Simpson and Reality Kats filed the Novato Action and the related *Lis Pendens* in

21  bad faith to intentionally cloud title to Novato Development's property so that Lennon, Mirsyl

22  and Novato Development would be unable to further develop Novato Development's

23  undeveloped lots or to sell any of its property causing Mirsyl to default on the Promissory Note

24  held by Reality Kats. Simpson and Reality Kats wanted to cause the default so that Simpson and

25  Reality Kats could obtain possession of Novato Development and to cause Lennon harm.

26       95.    Simpson and Reality Kats did not engage in any discovery or otherwise

27  prosecute the Novato Action.

28  Page 16 — COMPLAINT

96.     Simpson and Reality Kats failed to prosecute this action because they were not interested in an adjudication on the merits. Simpson and Reality Kats and their attorney knew that the claims lacked merit. The sole purpose of the action  was to harass Lennon, Mirsyl and Novato Development, to litigate Lennon into the ground and to provide Simpson and Reality Kats a vehicle for filing the *Lis Pendens* to cloud Novato Development's property to prevent Lennon, Mirsyl and Novato Development from being able to develop and sell any of Novato Development's property thereby depriving them of any revenue from Novato Development. Simpson and Reality Kats scheme was to cause Lennon and Mirsyl to default on their promissory notes on property purchased from Reality Kats.

97.     The first indication that Simpson and Reality Kats were more interested in dragging out the Novato Action rather than prosecuting it came in connection with serving the summons and complaint. Simpson and Reality Kats never attempted to effectuate service of the summons and complaint.  The complaint in the Novato Action was filed November 2, 2016. In accordance with Fed. R. Civ. P. 4(m), plaintiffs should have effectuated service by on or about January 31, 2017 and didn't.

98.     Secondly, Simpson and Reality Kats took absolutely no discovery in this case — not an interrogatory, request for production of documents or a deposition notice. There was no need, Simpson and Reality Kats were fully aware of the truth that there was no basis for their claims and they were not looking for an adjudication on the merits.

99.      After Lennon advised Simpson and Reality Kats that Lennon, Mirsyl and Novato Development were going to move for summary judgment, on or about January 29, 2018, Simpson and Reality Kats filed a motion to voluntarily dismiss the Novato Action without prejudice pursuant to Fed. R. Civ. P. 41(a)(2).

100.     Simpson and Reality Kats wanted to dismiss the Novato Action without prejudice, notwithstanding that it was already pending for over a year, to avoid an adverse determination with Lennon, Mirsyl and Novato Development moving for summary judgment.

101.    In their motion to dismiss without prejudice, as found by the Court, Simpson and

Reality Kats falsely claimed that they wanted to consolidate the Novato Action with the

Bellinger Property Action pending in Oregon against Lennon and his wife regarding the

Bellinger Property. Simpson and Reality Kats falsely claimed as follows:

> This motion is brought on the following grounds: there is another
> related action pending between the parties in the State of Oregon,
> Plaintiffs [Simpson and Reality Kats] will seek to amend those
> pleadings to encompass all disputes between the parties in a single
> action, and dismissal of the present action promotes judicial
> efficiency and is authorized under FRCP 41(a)(2).

102.    Simpson and Reality Kats knew this statement in their motion was false as they

knew that earlier that very day, their attorney in Oregon voluntarily dismissed the Bellinger

Property Action, the only action in Oregon pending against Lennon, to avoid the hearing on

Lennon's motion for summary judgment scheduled for that afternoon.

103.    Lennon, Mirsyl and Novato Development opposed Simpson and Reality Kats'

motion to voluntarily dismiss the Novato Action, and on February 8, 2018 moved for summary

judgment.

104.    The Court denied Simpson and Reality Kats' motion to dismiss the Novato

Action voluntarily, without prejudice, and granted Lennon, Mirsyl and Novato Development

summary judgment dismissing the action with prejudice.

105.    In denying Simpson and Reality Kats' motion to dismiss without prejudice, the

Court (Hon. Claudia Wilken) held as follows:

> Defendants [Lennon, Mirsyl and Novato Development] point out
> that there is no Oregon state court action brought by Plaintiffs
> [Simpson and Reality Kats] against Defendants that is currently
> pending. In fact, on January 29, 2018, the same day that Plaintiffs
> filed their motion to dismiss, Plaintiffs voluntarily dismissed what
> appears to be the only Oregon state court action that was pending
> against Lennon at that time. See Reality Kats LLC v. David
> Lennon, Jody Lennon, Case No. 17CV05360 (Jackson Sup. Ct.
> Feb. 7, 2017) (Oregon state court action). The docket shows that
> Plaintiffs voluntarily dismissed the action without prejudice on the
> eve of trial, which was scheduled for February 13, 2018, and while
> motions for summary judgment, sanctions, and abatement were
> pending. Plaintiffs misrepresented their intent to consolidate this

1
2

action with the Oregon state court action and thus have not shown sufficient reason for dismissal without prejudice.

106.   Thereafter, Lennon, Mirsyl and Novato Development moved for sanctions against Simpson and Reality Kats and their attorney for filing a frivolous action and for making intentional misrepresentations in their legal filings.

3
4
5

107.   After entry of judgment, Simpson and Reality Kats moved for a new trial or to amend the judgment so that Simpson and Reality Kats could bring yet another action against Lennon in Oregon.  The Court denied their motion.

6
7
8

108.   The Court granted Lennon, Mirsyl and Novato Development's motion for sanctions and sanctioned Simpson and Reality Kats $199,207.85 and their attorney $3,400.00.

9
10

109.   In granting Lennon, Mirsyl and Novato Development's motion for sanctions, the Court found:

11
12

> Plaintiffs [Simpson and Reality Kats] did not prosecute their claims diligently and instead tried to prolong the litigation with frivolous arguments at every turn. They served no discovery in this case and did not investigate or develop their claims in any way. *See id.* at 11. When it became clear that they might suffer an adverse ruling in this case, they filed for voluntary dismissal to avoid such a ruling. *Id.* at 9. In their motion for voluntary dismissal, they misrepresented that they intended to consolidate their claims here with an Oregon state court action, when in fact they had voluntarily dismissed that action earlier that day. See id. at 8. In their opposition to the motion for summary judgment, Plaintiffs did not respond to any of Defendants' substantive arguments, but instead urged the Court to enter partial summary judgment on the "single factual premise" "that Plaintiffs were not represented by Defendant David Lennon in the sale of Novato Development." *Id.* at 10. Plaintiffs' argument ignored the fact that Defendants' motion for summary judgment attacked Plaintiffs' ability to prove any of their claims and was not based on a "single factual premise." *Id.* at 10-11. Plaintiffs had no persuasive legal basis for their argument, and simply stated that they wanted to "preserve claims not currently pled." *Id.* Plaintiffs' arguments in opposition to the summary judgment motion were frivolous. Plaintiffs have now repeated their frivolous arguments in slightly different form in their motion to amend the judgment.
>
> This is not the only litigation Plaintiffs have brought against Defendants. Over the course of nine months, Plaintiffs commenced five different proceedings against Lennon, in four different forums and three different states, many involving the same set of facts asserted here. Docket No. 49-1 ¶¶ 17, 30. Some of these proceedings were resolved in Defendants' favor, while

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Page 19 — COMPLAINT

others were voluntarily dismissed by Plaintiffs before they could be adjudicated on the merits. MSJ Order at 8-9.

Taken together, Plaintiffs' actions suggest that they do not want to obtain an adjudication on the merits of their claims, but rather to prolong their campaign of litigation against Defendants in furtherance of an improper purpose.

Indeed, there is evidence that Plaintiffs filed this litigation and several others to put financial strain on Defendants so that they will default on their promissory notes and return Novato Development. *Id.* at 8-9. Before this litigation commenced, Curt Ankerberg, Plaintiffs' CPA, sent Simpson an email speculating that Lennon might not "have very much money to fight a lawsuit unless they sell assets" and that he "might just return ownership to Novato to you without a fight." Docket No. 49-21.

In short, Plaintiffs' actions demonstrate bad faith, justifying an award of attorneys' fees.

110.    Throughout the pendency of the Novato Development action, Simpson and Reality Kats refused to withdraw the *Lis Pendens*.

111.    On or about April 20, 2018, Simpson and Reality Kats filed a Notice of Appeal from the judgment entered April 2, 2018.

112.    On or about June 5, 2018, the Court of Appeals for the Ninth Circuit dismissed Simpson and Reality Kats' appeal for failure to comply with the Court's order regarding mediation.

113.    On or about June 8, 2018, Simpson and Reality Kats filed a motion to reinstate their appeal claiming "there are good grounds for the appeal and the amounts at issue are potentially very substantial."

114.    On June 8, 2018, without any comment from Lennon, Mirsyl or Novato Development, the Court of Appeals granted Simpson and Reality Kats' motion and reinstated their appeal.

115.    By stipulation, on or about September 4, 2018, Simpson and Reality Kats voluntarily withdrew their appeal days before the opening appellate brief was due.

**Simpson's New York Bar Complaint Against Lennon**

116.    In or about May 2017, Simpson filed a bar complaint against Lennon with the New York bar attorney grievance committee.

Page 20 — COMPLAINT

117.    Simpson again falsely alleged that Lennon "swindled" him because Lennon purportedly orally agreed to pay the Bellinger Note within 10 years.

118.    In the New York bar complaint about Lennon, Simpson also falsely claimed that Hoyal defrauded him in various way.

119.    The crux of Simpson's New York bar complaint was essentially the same as his claims in the Oregon State Court action against Lennon and his wife regarding the terms of the Bellinger Note.

120.    In or about May 2018, following their investigation and after Simpson and Reality Kats voluntarily withdrew the Oregon State action against Lennon and his wife regarding the Bellinger Property on the same issues raised in the New York bar complaint, the New York bar dismissed Simpson's bar complaint and took no further action against Lennon.

121.    All of defendants' claims have been asserted in bad faith.

**FIRST CLAIM**
**(Malicious Prosecution against Defendants Reality Kats, Simpson and Qili)**

122.    Plaintiffs reallege and incorporate herein by reference all of the preceding paragraphs of this Complaint.

123.    The Novato Action and the Bellinger Property Action were initiated against Lennon, Mirsyl and Novato Development by or at the direction of Defendants.

124.    The Novato Action and Bellinger Property Action were continued by or at the direction of Defendants to a legal termination on the merits in favor of Lennon, Mirsyl and Novato Development.

125.    Defendants did not have probable cause to file the Novato Action against Lennon, Mirsyl and Novato Development, or the Bellinger Property Action against Lennon and his wife. Defendants knew or reasonably should have known that the claims in the Novato Action and Bellinger Property Action were without merit. Defendants perpetuated the claims after they knew or should have known that those claims had no merit.

Page 21 — COMPLAINT

126.    In initiating and perpetuating the Novato Action and Bellinger Property Action, Defendants acted primarily for a purpose other than succeeding on the merits of the claims. That purpose includes, but is not limited to, preventing plaintiffs from developing and selling any of Novato Development's real property thereby depriving plaintiffs any income from Novato Development so that they could not service the promissory notes held by defendant Reality Kats so that defendants Reality Kats and Simpson could take possession of the real property owned by plaintiffs.

127.    In initiating and continuing the Novato Action and the Bellinger Property Action, Defendants acted with oppression, fraud, and malice, including, but not limited to, acting with an intent to cause injury to plaintiffs, and engaging in despicable conduct with a willful and conscious disregard of the rights of others, including Lennon, Mirsyl and Novato Development.

128.    As a direct and proximate result of Defendants' conduct, Lennon, Mirsyl and Novato Development were forced to expend a significant amount of time and money in defending the meritless claims filed by defendants.  Further, Lennon and Novato Development suffered significant harm to their reputation and business interests. These damages have resulted in harm to Lennon and Novato Development in an amount in excess of the jurisdictional limit of this Court. The conduct of Defendants, individually and collectively, was a substantial factor and proximate cause in bringing about plaintiffs' harm.

## SECOND CLAIM
### (Abuse of Process Against Defendants Reality Kats and Simpson)

129.    Plaintiffs reallege and incorporate herein by reference all of the preceding paragraphs of this Complaint.

130.    Defendants intentionally and willfully commenced the Novato Action and filed the *Lis Pendens* for the improper purpose to coerce plaintiffs to, *inter alia*, undo or restructure the Novato Development transaction.

Page 22 — COMPLAINT

131.    Defendants intentionally and willfully commenced the Bellinger Property Action for the improper purpose to coerce plaintiffs to restructure the Bellinger Note or surrender the Bellinger Property.

132.    Defendants intentionally and willfully commenced the FTC third-party complaint for the improper purpose to harm Lennon.

133.    Plaintiffs were harmed by virtue of defendants' actions.

134.    Defendants' conduct was a substantial factor in causing plaintiffs harm.

**THIRD CLAIM**
**(Slander of Title against all Defendants)**

135.    Plaintiffs reallege and incorporate herein by reference all of the preceding paragraphs of this Complaint.

136.    Defendants caused the recording of the *Lis Pendens* which casts doubt about Novato Development's ownership and right to develop and sell its real property.

137.    The recording of the *Lis Pendens* caused it to become a public record.

138.    Defendants were not entitled to record the *Lis Pendens* clouding plaintiff Novato Development's title to its real property.

139.    Defendants knew or with a reckless disregard for the truth that the filing of the *Lis Pendens* was improper.

140.    Defendants knew or should have known that third parties might act in reliance on the filed *Lis Pendens* and that plaintiffs would be unable to build, finance, or sell any of Novato Development's real property.

141.    Plaintiffs suffered immediate and direct financial harm because plaintiff Novato Development was unable to build, finance, or sell any of Novato Development's real property as a result of defendants' filing the *Lis Pendens*.

**FOURTH CLAIM**
**(Conspiracy against all Defendants)**

142.    Plaintiffs reallege and incorporate herein by reference all of the preceding paragraphs of this Complaint.

Page 23 — COMPLAINT

1

143.   In or about late 2015 or early 2016, defendants knowingly and willfully conspired

2  and agreed among themselves to commence numerous meritless legal proceedings against

3  Lennon, his wife and his companies to cause defaults on the Novato Note and the Bellinger Note

4  so that Reality Kats could regain possession of Novato Development and the Bellinger Property.

5

144.   Qili was aware that Simpson and Reality Kats made material misrepresentations

6  in the prosecution of the Novato Action and Bellinger Property Action, that the claims were

7  frivolous and were brought for the improper purpose to litigate against Lennon and his

8  companies so that Reality Kats could regain possession of Novato Development and the

9  Bellinger Property.

10

145.   Qili agreed with and cooperated with Simpson and Reality Kats in the malicious

11  prosecution of the Novato Action, the Bellinger Property Action and the other proceedings

12  against Lennon, and intended that Reality Kats wrongfully obtain possession of Novato

13  Development and the Bellinger Property from Lennon and Mirsyl.

14

146.   Plaintiffs were harmed by virtue of defendants' actions.

15

147.   Defendants' conduct was a substantial factor in causing plaintiffs harm.

16

**WHEREFORE**, plaintiffs David Lennon, Mirsyl, Inc. and Novato Development LLC,

17  demand judgment as follows:

18

a.     For special damages including attorneys' fees and other costs in defending

19  the actions, damage to reputation and harm to business interests, in an amount to be proven at

20  trial in excess of $5 million;

21

b.     For general damages according to proof at trial;

22

c.     For attorneys' fees and costs of suit herein;

23

d.     For punitive damages in such amount as the Court may deem appropriate

24  to penalize Defendants for their intentional and malicious misconduct;

25

e.     For prejudgment interest; and

26

27

28  Page 24 — COMPLAINT

f.    For such other relief as the Court may deem plaintiffs entitled to receive.

Dated:  April 2, 2020

LELAND, PARACHINI, STEINBERG,
MATZGER & MELNICK LLP

By:_____/s/ David B. Tillotson_____
David B. Tillotson

LENNON & KLEIN, P.C.

By:_____/s/ David P. Lennon_____
David P. Lennon
(*pro hac vice* application forthcoming)

Attorneys for Plaintiffs
MIRSYL, INC., DAVID P. LENNON
and NOVATO DEVELOPMENT, LLC

**DEMAND FOR JURY TRIAL**

Plaintiffs David P. Lennon, Mirsyl, Inc. and Novato Development, LLC hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure as to all issues or claims for which a jury trial is allowed.

Dated:  April 2, 2020

LELAND, PARACHINI, STEINBERG,
MATZGER & MELNICK LLP

By:_____/s/ David B. Tillotson_____
David B. Tillotson

LENNON & KLEIN, P.C.

By:_____/s/ David P. Lennon_____
David P. Lennon
(*pro hac vice* application forthcoming)

Attorneys for Plaintiffs
MIRSYL, INC., DAVID P. LENNON
and NOVATO DEVELOPMENT, LLC