1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                         NORTHERN DISTRICT OF CALIFORNIA
10                                San Francisco Division

11   DAVID P. LENNON, et al.,              Case No. 20-cv-02258-LB
12                   Plaintiffs,           (Consolidated with Case No. 20-cv-02271-LB
13          v.
                                           **FINAL PRETRIAL ORDER**
14   REALITY KATS, LLC, et al.,            Re: ECF No. 125
15                   Defendants.
16   REALITY KATS, LLC,
17                   Plaintiff,
18          v.
19   MIRSYL, INC., et al.,
20                   Defendants.
21

22       The court held a pretrial conference on April 4, 2024, and issues this pretrial order pursuant to

23   Federal Rule of Civil Procedure 16(e).

24

25   **1.   Trial Date and Length of Trial**

26       The jury trial will begin on Monday, May 13, 2024, in Courtroom D, 15th Floor, U.S. District

27   Court, 450 Golden Gate Avenue, San Francisco, California. The trial will last up to five days. The

28   trial day will run from 8:30 a.m. to approximately 1:30 or 2:00 p.m. (or slightly longer to finish a

witness) and will include two fifteen-minute breaks. Counsel must arrive at 8:15 a.m. to address any issues (such as objections) before the trial day begins. Once the jury begins deliberations, it usually stays past 2:00 p.m. The first day will be a full day. Each party will have up to ten hours per side for opening statements, closing arguments (including rebuttal closings), direct examination of witnesses, and cross examination of the other side's witnesses, including all objections raised during the trial day.

**2.  Procedures During Trial; Exhibit and Witness Lists; Witnesses**

The court's February 9, 2024, Case-Management and Pretrial Order has the court's trial procedures for the presentation of exhibits, depositions, and witness testimony, including specific procedures for deposition excerpts.[1] The parties have identified their witnesses in a joint witness list. As discussed at the pretrial conference, if the parties identify the same witnesses, the defendants will examine the witnesses when the plaintiffs call them (as opposed to recalling them).

**3.  Claims, Defenses, and Relief Sought**

The parties' positions (claims, defenses, and relief sought) are reflected in their joint proposed pretrial order at ECF No. 102.

**4.  Stipulations**

The parties have stipulated to certain facts.[2] That stipulation must be marked as an exhibit and read into evidence at trial.

**5.  Motions in Limine (MILs)**

For the reasons stated on the record and below, the court rules as follows.

---

[1] Case-Mgmt. and Pretrial Order – ECF No. 126 at 3–14. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] J. Final Pretrial Statement – ECF No. 102 at 4 (§ III) & Ex. A to *id.* – ECF No. 102-1.

United States District Court
Northern District of California

1

2

### 5.1     Pls.' MIL No. 1: Exclude, Based on Collateral Estoppel, Evidence that Defendants had Probable Cause or Acted with Proper Purpose — Granted

3

4

5

6

7

8

In two prior cases initiated by the defendants against the plaintiffs here, the courts sanctioned the defendants for bringing the case. The plaintiffs contend that collateral estoppel now bars the defendants from arguing that those cases were initiated with probable cause and for a proper purpose. The defendants respond that the plaintiffs have argued only that the prior cases terminated in their favor, which is a distinct element of the malicious-prosecution tort (that is, distinct from the probable-cause and improper-purpose elements of the tort).

9

10

11

12

13

14

15

16

"The doctrine of collateral estoppel prevents parties from relitigating issues that have been resolved in an earlier action between the same parties or their privies." *Peterson v. Clark Leasing Corp.*, 451 F.2d 1291, 1292 (9th Cir. 1971). "Collateral estoppel applies if: (1) the issue sought to be relitigated is identical to one necessarily decided in a previous proceeding; (2) the previous proceeding resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party (or was in privity with a party) in the prior proceeding." *E. Bay Law v. Ford Motor Co.*, No. 15-cv-04257-TEH, 2015 WL 7571809, at *2 (N.D. Cal. Nov. 25, 2015) (citing *People v. Taylor*, 12 Cal. 3d 686, 692 (1974)).

17

18

19

20

Regarding the Novato Action, Judge Wilken's sanctions order addressed both the probable-cause and improper-purpose elements, not merely the favorable-termination element. The same is true of the sanctions order in the Bellinger Property Action. The court therefore grants this motion in limine.

21

22

23

24

The defendants contend that if this motion is granted, then the plaintiffs should be precluded from damages on their malicious-prosecution claim because otherwise they would receive a double recovery. The court discussed this at the pretrial conference: this is an offset issue that can be addressed by the procedure that the plaintiffs propose.

25

26

27

28

### 5.2    Pls.' MIL No. 2: Exclude, Based on Collateral Estoppel, Evidence Concerning Mr. Lennon's Alleged Misrepresentations Regarding the Novato Development Transaction — Granted

The defendants' only response is that "even if the other courts found as a matter of fact that no misrepresentation occurred, this does not preclude the [defendants] from being able to offer evidence to show probable cause for having alleged that a misrepresentation occurred." This goes to the issue in the first motion in limine, which the court has already resolved. The court grants this motion in limine.

### 5.3    Pls.' MIL No. 3: Exclude, Based on Collateral Estoppel, Evidence Concerning Mr. Lennon's Alleged Responsibility for Authorship of Magazine Subscription Sales Solicitations — Granted

In a prior enforcement action by the FTC against Mr. Simpson and companies he controlled, the court held that magazine-subscription solicitations used by Mr. Simpson's entities were deceptive. In that case, Mr. Simpson argued that Mr. Lennon was responsible for the content of the mailers. But the court held that "[Mr.] Simpson developed and made the decisions about the deceptive mailer." The defendants contend that because Mr. Lennon was acting as attorney for Mr. Simpson and his entities at the time, Mr. Lennon was "involved" with the mailers. But the issue here is responsibility for authorship. On that issue, the court grants this motion in limine.

### 5.4    Pls.' MIL No. 4: Exclude Evidence of Mr. Lennon's Alleged Involvement in Certain Transactions Involving Jeffrey Hoyal — Granted

The transactions at issue were between Mr. Simpson and his former business partner Mr. Hoyal. The plaintiffs contend that because the defendants' claims arising from these transactions were litigated against Mr. Hoyal and "were summarily adjudicated against the [defendants] in [that] lawsuit," collateral estoppel bars the defendants from offering evidence that Mr. Lennon "was responsible for or involved in" the transactions. The plaintiffs also contend that any evidence that Mr. Lennon was involved in the facts underlying the claims in the Hoyal lawsuit would be irrelevant and confusing under Federal Rules of Evidence 401–03. For example, the facts in the

1  Hoyal lawsuit "were not even alleged in the Novato Action against [the plaintiffs]" (which the

2  plaintiffs now claim was malicious).

3      The defendants counter (in just one paragraph) that a "link and relationship" existed between

4  Mr. Hoyal and Mr. Lennon, as shown by the fact that Mr. Hoyal paid money to Mr. Lennon. "This

5  evidence relates to a substantive issue of joint conduct to structure financial transactions, and not

6  to a character issue." The defendants also argue that "evidence of [Mr.] Lennon's involvement

7  with [Mr.] Hoyal is also relevant to the [defendants'] counterclaims, including, but not limited to,

8  [Mr.] Lennon's involvement in the US Tax Court Case." The operative answer in the lower-

9  numbered action does not have counterclaims.[3] The original answer asserted four counterclaims

10  and included allegations of Mr. Lennon's allegedly divided loyalty between Mr. Hoyal and the

11  defendants.[4] But the operative answer dropped the counterclaims after the plaintiffs had moved to

12  dismiss them.[5] Of course, in the consolidated Case No. 20-cv-02271-LB, the Simpson parties are

13  the plaintiffs against the Lennon parties. But that case concerns a promissory note issued in

14  connection with the Lennon parties' acquisition of Novato Development, and it's not clear how

15  Mr. Hoyal is relevant to that note.

16      The defendants lost the Hoyal case and cannot relitigate it. Allowing evidence of it is not

17  relevant to the disputes here, at least in the plaintiffs' case, which is a damages case relating to the

18  allegedly malicious prosecutions. It also creates a sideshow and would be confusing to the jury.

19  That said, from the submissions and the argument at the pretrial conference, the parties' business

20  relationships — including with Mr. Hoyal — may factor into the disputes in the litigation. That

21  may be fair game at trial. If so, the plaintiffs may raise objections in context at trial.

---

[3] First. Am. Answer – ECF No. 39.

[4] Answer – ECF No. 17 at 56–57 (¶¶ 232–37).

[5] Letter from Pls. – ECF No. 42.

United States District Court
Northern District of California

1

2

### 5.5    Pls.' MIL No. 5: Exclude Testimony that Certain Emails and Other Documents are Fake or Forged — Granted

During his deposition, Mr. Simpson asserted that Mr. Lennon had forged or altered "some emails between Joseph Petrucelli (Simpson's trust and estate lawyer) and [Mr.] Lennon." Mr. Simpson also testified that Mr. Lennon "altered or forged a signature on a revised Unit Purchase Agreement[] and a Second Amended Operating Agreement for Novato Development." The plaintiffs challenge this testimony on various grounds, including that it is speculative and that the documents in question are irrelevant as they "appear to concern Simpson's tax case with the IRS." The defendants respond that they should be able to rely on "the emails themselves, taken as true, to support the [defendants'] defenses to the malicious prosecution claims because they show what the [defendants] knew and whether the lawsuits filed were objectively reasonable based on that knowledge." Because the defendants do not dispute the forgery issue, the motion is granted.

### 5.6    Pls.' MIL No. 6: Exclude Evidence of Mr. Simpson's Allegations Against Mr. Hoyal and Mr. Lennon in his IRS Dispute — Granted

The issue concerns allegations by Mr. Simpson against Mr. Lennon and Mr. Hoyal in response to an IRS audit of Mr. Simpson. According to the defendants, the relationship between Mr. Lennon and Mr. Hoyal "relates to a substantive issue of joint conduct to structure financial transactions, which is at the core of the full scope of disputes between the [p]arties." And this "core" of the disputes goes to what the Simpson parties knew about the relationship between Mr. Lennon and Mr. Hoyal (a relationship that factored into the five proceedings that the plaintiffs now claim were maliciously prosecuted). The analysis in the section addressing MIL No. 4 governs this dispute too. The earlier cases are irrelevant and confusing. But the parties' relationships may have some relevance. The plaintiffs may raise objections in context at trial.

### 5.7    Pls.' MIL No. 7: Exclude Testimony of Undisclosed Experts — Granted

The defendants may not offer testimony or other evidence from an expert witness because they did not disclose any. To the extent that Curt Ankerberg and Mark Orlando will testify about their personal knowledge of relevant facts, they may do so.

**6. Objections to Exhibits**

As discussed at the pretrial conference, the parties filed their joint exhibit list. There are too many exhibits, and the parties will work to reduce them. The limits on trial testimony will accomplish that in any event. There is also the issue of the defendants' need to review the exhibit list to make sure that it is complete. They agreed to submit any additional exhibits within seven days of the filing of this order, which can be the next business day seven days after the date of this order.

**7. Jury Instructions**

At the pretrial conference, the parties offered to update their jury instructions after the court issued this pretrial order. The court asks the parties to confer on Monday, April 8, 2024, and to update the court then about (1) when they will submit the updates (and earlier would be better because the court has the case in mind) and (2) whether the submitted preliminary instructions are fine as is, which will allow the court to finalize them now. The court will file the preliminary jury instructions and proposed final jury instructions shortly after they are submitted and can discuss them at the logistics pretrial conference set for May 2, 2024, at 1 p.m. That may obviate the need to have an instructions conference during trial and before closing argument to finalize any issues about the instructions.

**8. Verdict Form**

If this order affects the proposed form of verdict, then the parties must address it in their April 8 update. The court will file a proposed verdict form and will finalize it either at the May 2 pretrial conference or before closing argument.

**9. Voir Dire and Jury Questionnaire**

The parties agreed to use the court's questionnaire. The court will update the parties at the May 2 logistics conference about when the jury office will send the questionnaire to the jury venire, when it expects the responses, and the timing of any pretrial conference on excusing any jurors for cause. As the court said at the pretrial conference, after the parties receive the

questionnaires, normally they confer (on a schedule set by the court) and file a joint list of jurors that they agree should be excused for cause and flagging (if they can) any disputed for-cause challenges (to be addressed during jury selection). They must attach a proposed order. At a short pretrial conference the week before trial, the court will address the undisputed for-cause challenges and will advise the jury office of the ruling by 2:30 p.m. that day to avoid bringing in jurors unnecessarily.

The court allows attorney voir dire. At the pretrial conference, the parties discussed about thirty minutes each. They can update the court with any different proposal on May 2. Voir dire does not count against the trial time.

## 10. Trial

The court's ordinary processes are as follows. By Thursday, May 9, 2024, at 3:00 p.m., counsel must give notice of the order of proof (meaning, the order of witnesses and the exhibits, including illustrative exhibits used in opening statements and otherwise) for the first day of trial. Thereafter, at the end of each trial day, counsel must give notice of the order of proof for the next trial day. The parties must notify the court of any issues by the end of the business day so that the court can resolve them. To the extent that the parties will call hostile witnesses, which means that the opposing party's "cross examination" will be its direct examination, counsel must provide a list of all exhibits to be used with the same witness on cross examination (other than for impeachment). The parties will call their joint witnesses only once (which means that those witnesses will be called during the plaintiff's case).

**IT IS SO ORDERED.**

Dated: April 6, 2024

_____
LAUREL BEELER
United States Magistrate Judge